UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIA RAIMONDI, o/b/o R.R.,

    Plaintiff,

v.                              CASE No. 8:09-CV-2046-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments on behalf of her son.[*] Because the decision of the Commissioner of Social Security is not adequately explained, the decision will be reversed and the matter remanded for further consideration.

I.

Reynaldo Rivera, Jr., was born on May 28, 1996, and was twelve years old at the time of the administrative hearing (Tr. 14, 405). The plaintiff,

---

[*]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

who is the child's mother, has filed a claim for supplemental security income. She alleges that the child is disabled due to premature birth, attention deficit hyperactivity disorder, learning difficulties, and asthma (Tr. 243). The claim was denied initially and upon reconsideration.

The child's mother, at her request, then received a de novo hearing before an administrative law judge. Following the hearing, the law judge found that the child suffers from severe impairments of asthma, mathematics disorder, and visual processing deficit (Tr. 14). The law judge also found that the child "has a history of attention deficit hyperactivity disorder, though it is not currently present" (id.). The law judge concluded that the child does not have an impairment which meets, or equals, "one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (Tr. 14). The law judge also found that "the claimant does not have an impairment or combination of impairments that functionally equals the listings" (id.). The law judge, therefore, determined that the child was not disabled (Tr. 21). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In 1996, the Social Security Act was amended with respect to eligibility for child's disability benefits. As amended, the Act now provides (42 U.S.C. 1382c(a)(3)(C)(i)):

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The Commissioner subsequently issued regulations explaining how this provision would be implemented in determining whether a child is disabled. See 20 C.F.R. 416.924.

Similar to the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R. 416.924(a). The first step is to determine whether the child is actually working at substantial gainful activity. 20 C.F.R. 416.924(b). If not, the second step asks whether the child has a severe impairment. 20 C.F.R. 416.924(c). If he does not, the child is considered not disabled. Id. If there is a severe impairment, the third, and final, step in the analysis is to determine

whether the child has an impairment that meets, medically equals, or functionally equals, a set of criteria in the Listing of Impairments in Appendix 1. 20 C.F.R. 416.924(d). If the child does, then he is deemed disabled. 20 C.F.R. 416.924(d)(1). If he does not, then he will be found not disabled. 20 C.F.R. 416.924(d)(2).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision in three respects: (1) the law judge failed to forward interrogatories to a consultative expert, which denied the plaintiff due process; (2) the law judge's finding of a less than marked limitation in the attending and completing tasks domain was not supported by substantial evidence; and (3) the law judge failed to adequately support his finding that the plaintiff's testimony was only fairly

credible (Doc. 21). At least the latter two arguments are well-taken and require remand.

Starting with the second issue, the plaintiff contends that the law judge's finding that the child has "less than marked" limitations in the area of attending and completing tasks is unsupported by substantial evidence. He also argues in this connection that the law judge did not adequately explain this finding (id., pp. 10, 11, 13). Because the plaintiff is correct that the law judge did not adequately explain his decision that the child had a less than marked limitation with respect to attending and completing tasks, meaningful judicial review of that finding is not possible.

As indicated, in order to be found disabled, a child must equal, medically equal, or functionally equal, a listing in Appendix 1. The plaintiff makes no contention that her son meets, or medically equals, a listing. Further, her argument that her son functionally equals a listing is confined to a contention that he has a marked limitation in the area of attending and completing tasks.

The plaintiff, moreover, cannot receive benefits for the period before May 11, 2005, the day she filed the application for benefits (Tr. 71). Thus, while evidence preceding May 11, 2005, may shed light on the

plaintiff's disability claim, it cannot be the basis for an award of benefits, absent proof that the plaintiff's condition extended beyond that date.

As previously stated, the plaintiff's argument is that the child's impairments are the functional equivalent of a listed impairment. Under the applicable regulations, functional equivalency could be shown in various ways. 20 C.F.R. 416.926a. In this case, the plaintiff relies on the approach of demonstrating that the child has a marked limitation in two of six "domains" of functioning. 20 C.F.R. 416.926a(a). The six domains of functioning are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being. 20 C.F.R. 416.926a(b)(1).

Here, the law judge found that the child suffered from "marked" limitations in the acquiring and using information domain, "less than marked" limitations in the domains of attending and completing tasks and interacting and relating with others, and no limitations in the remaining three domains (Tr. 17-21). The plaintiff argues that the child's visual processing deficit, which the law judge found to be a severe impairment, causes him to experience marked limitations in attending and completing tasks.

The regulations provide that a marked limitation arises "when [the child's] impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities. [The child's] day-to-day functioning may be seriously limited when [the child's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the child's] impairment(s) limit several activities." 20 C.F.R. 416.926a(e)(2)(i). Further, a marked limitation denotes "a limitation that is 'more than moderate' but 'less than extreme.'" Id.

If the plaintiff's contention regarding a marked limitation in the domain of attending and completing tasks is correct, she would establish the child's disability by showing that he suffers from marked limitations in two domains in light of the law judge's finding of a marked limitation in the domain of acquiring and using information. Unfortunately, the plaintiff's claim that the law judge erred in assessing the area of attending and completing tasks cannot undergo meaningful judicial review because the law judge failed to provide a sufficient analysis for his conclusion. Thus, the law judge gave only the following brief statement supporting the conclusion that the child did not have a marked limitation in that area (Tr. 18) (emphasis in original):

> The claimant has less than marked limitation in attending and completing tasks. The claimant talks in class at times when he chooses not to pay attention to the teacher. However, he is able to focus and finish tasks assigned when given some additional time, without the need for prescription medications for his history of attention deficit hyperactivity disorder. He does have weaknesses processing visual material quickly and with organization skills, but nothing of a marked nature.

This conclusory statement does not discuss any of the evidence that has a bearing on the domain. Moreover, it does not provide a cogent explanation for the finding that the child's limitations are less than marked.

An assessment of the attending and completing tasks domain generally entails consideration of how well the child is able to focus and maintain attention and begin, carry through, and finish activities, including the pace at which the child performs activities and the ease with which the child changes them. 20 C.F.R. 416.926a(h). Here, there is evidence in the record that the child's day-to-day functioning is seriously limited with regard to these activities.

For example, in October 2004, the child's third-grade teacher noted on a questionnaire that the child "very often" failed to follow through on instructions, failed to finish schoolwork, had difficulty organizing tasks

and activities, was easily distracted by extraneous stimuli, and was forgetful in daily activities (Tr. 183). The teacher further noted that the child "often" failed to give attention to details and had difficulty sustaining attention to tasks or activities (id.). While these assessments were made before May 11, 2005, the date of the application, they nevertheless show the child's condition leading up to the period for which benefits can be awarded.

In April 2005, a School Psychological Evaluation Report, drafted by a school psychologist, reflected a similar review by the child's teachers (Tr. 333-40). Specifically, it was noted that the child's third grade teacher had complained that the child was "rarely on-task, and, despite prompting and individual assistance, does not complete in class assignments" (Tr. 334). The psychologist additionally noted that other "[a]necdotal teacher notes describe [the child] as 'extremely inattentive and easily distractible'" (id.). After personally observing the child in a testing setting, the psychologist observed that, "[i]n a room generally void of distracting stimuli, [the child] evidenced difficulty remaining on-task" (Tr. 336). The psychologist therefore concluded that the child's on-task behavior was "poor," and, consequently, recommended that he be given some accommodation to "assist in the maintenance of on-task behavior" (Tr. 338).

An October 2005 Teacher Questionnaire filled out by the child's reading and social studies teacher offers yet another similar assessment (Tr. 206-13). In the questionnaire, the teacher rated the child as having "[a] serious problem" with finishing assigned activities and tasks, and "obvious problem[s]" with carrying out multi-step instructions, changing activities without being disruptive, completing class and homework assignments, and finishing assignments on time (Tr. 208).

An Individual Education Plan (IEP) formulated by a team of various school district personnel in March 2006 also suggests that the child had notable functional limitations in attending and completing tasks (Tr. 164-73). For example, a narrative detailing the child's level of educational performance indicated that the child was forgetful, had difficulty staying focused to complete assignments, needed prompting to stay focused, and needed additional time to complete assignments (Tr. 164). It was further noted that the child "does not demonstrate on-task behavior, complete assignments, or follow directions" (Tr. 165). Consequently, the child was given a number of instructional delivery and testing accommodations, such as more time, shortened assignments, frequent breaks, and cuing and prompting (Tr. 168-69, 170).

On the other hand, there was evidence that supports the law judge's finding that throughout the period the child's limitations in attending and completing tasks was less than marked. Dr. Steven F. Wu, following a consultative evaluation in June 2008, expressed such an opinion (Tr. 259). Moreover, a nonexamining reviewing pediatrician and a nonexamining reviewing psychologist (as well as two other individuals) (Tr. 260), opined in the Fall of 2005 that the child's limitations in the domain were less than marked (Tr. 274, 317). The law judge did not explain what weight he gave to the opinions of these nonexamining reviewers, although the regulations required him to do so. 20 C.F.R. 416.927(f).

In addition, the child's IEP documents after 2006 indicate that the child's attention had improved. Thus, the plan dated March 2, 2007, stated that the child "has mastered his independent functioning goal" (Tr. 127). The 2008 plan indicated with respect to independent functioning that "[t]here are no concerns at this time" (Tr. 78; see also Tr. 108, 109). This evidence indicates that the child may have had a problem with independent functioning, but that his limitation either improved or was eliminated. In other words, the evidence could support a finding of a closed period of

benefits based upon a determination that the child's limitation regarding attending and completing tasks was marked for only part of the period.

Importantly, the law judge did not discuss any of this evidence with respect to its impact on the attending and completing tasks domain. It is established in the Eleventh Circuit that a law judge must state the weight given to each item of impairment evidence, and provide reasons for that assessment. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In the absence of such an explanation, appropriate judicial review is not possible. Hudson v. Heckler, 755 F.2d 781, 786 (11th Cir. 1985). The law judge's decision regarding the domain of attending and completing tasks totally fails to provide a reviewable justification for its finding. Therefore, it must be remanded.

Moreover, the inadequacy of the law judge's assessment of the attending and completing tasks domain is not the only deficiency in the law judge's decision. As the plaintiff also argues, the law judge's credibility finding with respect to the plaintiff was not sufficiently explained.

Prior to turning to the six domains of functioning, the law judge recounted the plaintiff's testimony regarding her son's functional limitations (Tr. 15-16). The law judge noted that the plaintiff testified that her son "has

a processing problem, and can not sit for long periods" and that "[h]e becomes irritated, cannot focus and needs time-outs for tests" (Tr. 15). The law judge also said that the plaintiff testified that his new IEP schedule will grant him extra break time; that, if he does not check his schedule, he will forget what he is doing; that he gets only half the homework of a regular class; and that he does not always finish his class-work (id.).

Following his statement of the plaintiff's testimony, the law judge said that the plaintiff was "fairly credible," but added that "she had some exaggerated testimony regarding the claimant's functional limitations that is not shown by the objective medical evidence of record to the extent she alleged" (Tr. 16). There was no further explanation of the credibility determination (Tr. 16-17). It is entirely unclear to what extent the law judge discounted the plaintiff's testimony that would have a bearing on the domain of attending and completing tasks. Moreover, there is no explanation for discounting any such testimony.

In discrediting the plaintiff's testimony, the law judge was required to "articulate explicit and adequate reasons for doing so." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The law judge did not provide such a justification for discounting the plaintiff's critical testimony

regarding the domain of attending and completing tasks. This deficiency confirms that a remand is necessary.

The plaintiff also argues that the law judge failed to forward her interrogatories to Dr. Wu, whose report the law judge had proposed to include in the record. She alleges that her resulting inability to obtain answers to her interrogatories was a violation of her right to due process.

The record demonstrates that, on July 24, 2008, more than a month prior to the hearing, the law judge sent plaintiff's counsel a letter informing him that an additional psychological evaluation performed by Dr. Wu, a consultative examiner, would be included in the record (Tr. 38). The law judge enclosed the report for the attorney's review, and additionally set forth a variety of methods by which the plaintiff could exercise her right to challenge the report, including submitting written comments, additional records, or written questions to be sent to Dr. Wu (id.). The law judge additionally explained that the plaintiff had the right to request a supplemental hearing, at which the plaintiff would be given the opportunity to "appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law" (id.).

It appears that, on August 4, 2008, the plaintiff exercised the option to submit written questions to be sent to Dr. Wu (Tr. 75). The record indicates that the Social Security Administration was agreeable to that approach (see Tr. 28), but for some reason that was never done. Since this matter is being remanded, the Commissioner should, if the plaintiff requests, submit the first question to Dr. Wu (the second question, as the Commissioner correctly explains, is not pertinent).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby REVERSED and the matter REMANDED for further consideration. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 2nd day of December, 2010.

                                                  THOMAS G. WILSON
                                                  UNITED STATES MAGISTRATE JUDGE